UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DANNY HILL,                                )
                                           )
    Plaintiff,                             )
                                           )
    v.                                     )   CAUSE NO.: 1:14-CV-288-TLS
                                           )
CITY OF MARION, LT. SCOTT HALEY,           )
OFFICER TRAVIS BRADY, OFFICER              )
BENJAMIN McKNIGHT, OFFICER                 )
STEVEN THOMPSON, OFFICER GREGG             )
MELTON and OFFICER TODD FLEECE,            )
                                           )
    Defendants.                            )

**OPINION AND ORDER**

The Plaintiff, Danny Hill, has sued law enforcement employees of the City of Marion and the Grant County Sheriff Department, alleging that one of them used excessive force against him, and that the others failed to intervene while the excessive force was being applied. The Plaintiff also asserts a state law battery claim against the City of Marion on a theory of respondeat superior.

The employees of the Grant County Sheriff Department, Lt. Scott Haley and Sgt. Todd Fleece, have moved for summary judgment in their favor [ECF No. 59]. They argue that the Plaintiff's excessive force claim fails as a matter of law because the Plaintiff is unable to establish that either of them used excessive force, or that they improperly failed to intervene in the use of excessive force. Alternatively, they argue that they are entitled to qualified immunity. Haley and Fleece assert that, to the extent the Plaintiff is attempting to bring a state law claim against them, it fails as a matter of law because he did not serve a tort claim notice with their employer, the Grant County Sheriff, and that any state law claim is barred under the Indiana Tort Claims Act for actions performed by them as governmental employees.

The City of Marion Defendants, Officer Travis Brady, Officer Benjamin McKnight, Officer Gregg Melton, Officer Steven Thompson, and the City of Marion, have also moved for summary judgment [ECF No. 62]. They argue that there is no genuine issue of material fact as to whether any of the individually named Marion police officers applied the alleged excessive force. Alternatively, they assert a qualified immunity defense. Finally, they assert that, because the Plaintiff cannot prove that the person who committed a battery upon him was an employee of the City of Marion, the City cannot be liable under a theory of respondeat superior.

In response, the Plaintiff concedes that he did not file a Notice of Tort Claim against the Grant County Sheriff and is not claiming state law torts against Haley and Fleece, who were Grant County Sheriff employees. He also acknowledges that he is not able to identify which officer intentionally fell on him, and therefore will not continue to pursue a battery claim. However, for his Fourth Amendment excessive force claims against the individual officers, the Plaintiff maintains that a jury could find that the force used was excessive and unreasonable. Moreover, he asserts that he is not required to identify which officer used excessive force because they are liable as bystanders who did not intervene by calling for help or asking the assaulting officer to stop.

**SUMMARY JUDGMENT STANDARD**

The court will only grant summary judgment if all of the admissible submissions indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a). The court's role in deciding a motion for summary judgment "is not to sift through

the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010), and *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

## STATEMENT OF FACTS

On June 21, 2013, the Plaintiff was sitting in a vehicle that was parked on a street in Marion, Indiana, along with two passengers, Tennessee Allen and Quentin Washington. A van pulled up behind the vehicle, and the Plaintiff saw two men in civilian clothing walk toward his car. Because the Plaintiff and his companions were listening to music, he did not hear what the men were saying, but he could see that one of the men had his hand on a weapon located at his waist. The Plaintiff became fearful and drove away. The two men were Lt. Scott Haley and Sgt. Todd Fleece of the Grant County Sheriff's Department. The Plaintiff had active warrants for his arrest on prior charges of resisting law enforcement and drug dealing.

As he was driving back to his apartment, the Plaintiff noticed a marked City of Marion police car with activated emergency lights following him. The Plaintiff stopped his car in front of the apartment. When the Plaintiff exited his vehicle and attempted to express his concerns

about what happened with the van, the officer pulled a weapon and ordered the Plaintiff to the ground. The Plaintiff immediately complied and was handcuffed by a second officer. After the Plaintiff was handcuffed, there was confusion as officers engaged the other occupants of the car (Allen and Washington), and neighbors gathered to witness the events.

The Plaintiff had been laying face down on the ground for two to three minutes when he felt a large person drop his knees into the Plaintiff's back, and push the Plaintiff's face into the asphalt. The Plaintiff complained, but the unidentified officer put even more weight on his back and told him to "shut up." Despite the intense pain, the Plaintiff complied for the three to five minutes that the officer kept him pinned to the ground. The officers named in the Amended Complaint were all on the scene during the time the Plaintiff alleges he was pinned down.

The Plaintiff was taken to jail based on the two active arrest warrants and on a charge of resisting law enforcement. The Plaintiff pled guilty to resisting law enforcement as a result of the incident.

**ANALYSIS**

A claim that a police officer has used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen is analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). An officer may be held accountable "both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chi.*, 700 F.3d 919, 926 (7th Cir. 2012) (citations omitted); *id.* at 929 ("a defendant's failure to

intervene can be a form of personal involvement in the wrongdoing of another officer"). To establish liability based on failure to intervene, a plaintiff must show that the officer (1) knew that another officer was using or about to use excessive force, (2) had a realistic opportunity to stop the use of excessive force, and (3) failed to take reasonable steps to do so. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A "realistic opportunity" means a chance to warn the officer using excessive force to stop. *See Abdullahi*, 423 F.3d at 774.

In assessing whether an officer's use of force violates the Fourth Amendment, the question is whether the officer's "actions are objectively reasonable in light of the information known at the time of an arrest." *Miller v. Gonzalez*, 761 F.3d 822, 828 (7th Cir. 2014). This question turns on such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Courts also consider "whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). An officer's use of force is unreasonable if in light of all those circumstances at the time of the seizure, the officer used greater force than was reasonably necessary to effectuate the seizure. *Graham*, 490 U.S. at 397.

The Plaintiff does not know who kneed him in the back and pressed his face to the ground. Accordingly, he relies on a failure to intervene as his theory of liability. Nevertheless, "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *see also Yang*, 37 F.3d at 284 (noting that a plaintiff must show that the failure to intervene deprived

5

the plaintiff of a constitutional right). Accordingly, the Court first addresses whether, taking the Plaintiff's version of events as true, a reasonable jury could conclude that the degree of force was excessive under the circumstances of this case.

The Defendants argue that pinning the Plaintiff to the ground did not involve greater force than was reasonably necessary to effectuate his arrest, and thus there is no underlying constitutional violation. Pointing to the *Graham* factors—the severity of the crime, the threat to the safety of the officers or others, and active resistance to arrest or evasion through flight, 490 U.S. at 396—the Marion Defendants argue:

> In this case, the Plaintiff was detained for fleeing an officer and resisting arrest. In doing so, he engaged the police in a vehicular pursuit which endangered the public and the officers involved. Clearly, the arrestee posed a threat to the safety of the officers and others through his actions to that point. . . . [T]he police officers were not required to take at face value the Plaintiff's subsequent surrender as an indication that he would no longer attempt to flee or evade, or that he was unarmed and presented no further danger. This is a case of an individual who had actively both resisted arrest and attempted to flee and evade arrest.

(Defs.' Br. 14–15, ECF No. 63.) The Defendants note that the situation was tense, uncertain, and rapidly evolving. Using similar arguments, the Grant County Defendants note that the Plaintiff had "just fled from police in his vehicle and had active arrest warrants for resisting law enforcement." (Mem. of Law 9, ECF No. 60.)

The Defendants place particular emphasis on the Plaintiff's vehicular flight. But the record is strikingly sparse on the details of this vehicular pursuit. There is no evidence describing the Plaintiff's manner of driving or the conditions that existed at the time, such that would support the Defendants' assertion that the pursuit endangered the public and the officers involved. But more to the point, even if these details had been included, and even if they showed an active attempt to evade arrest, the Court could not agree with the Defendants' argument that

6

"[t]he Plaintiff's apparent surrender did not negate any of his prior conduct." (Defs.' Br. 15.) The Defendants urge the Court to remember that an officer is not required "to take a suspect's apparent surrender at face value," and that "surrender, in and of itself does not establish that a suspect is unarmed or not dangerous." (Defs.' Br. 13 (citing *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (noting that the officer "had no idea how Johnson was going to behave once he was cornered").)

The principle set forth in *Johnson* is an exception to the "well established" principle "that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders," which "depends critically on the fact that the suspect is indeed subdued." 576 F.3d at 660. As the *Johnson* court explained,

> No law that we know of required [the officer] to take Johnson's apparent surrender at face value, a split second after Johnson stopped running. Until he encountered a fence that was too high for him to jump over, Johnson had used every method at his disposal to flee from the police. The surrender also did not establish that Johnson was unarmed. A reasonable officer could think that the use of the dog was necessary to help control Johnson; otherwise, Johnson might have had the time he needed to retrieve and use a weapon. Finally, it is worth noting that it could not have been more than one second between Johnson's surrender and the use of force by [the officer] . . . . In short, [the officer's] use of force—in the form of [his police dog]—to subdue Johnson was objectively reasonable, given the uncertainties in the situation that faced him.

*Id.* at 660–61. Here, the Plaintiff's surrender was more than "apparent." The fact that the Plaintiff had already been handcuffed and was laying face down on the ground for one to two minutes when he was kneed in the back is a crucial distinguishing factor.

Moreover, the Marion Defendants' argument that the Plaintiff's surrender "did not negate any of his prior conduct" (Defs.' Br. 15) runs counter to Seventh Circuit precedent establishing that the "prohibition against significant force against a subdued suspect applies notwithstanding

7

a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (finding that the force allegedly used was excessive "notwithstanding [the plaintiff's] previous attempt to flee:); *see also Cyrus v. Town of Mukwonago, Wis.*, 624 F.3d 856, 863 (7th Cir. 2010) (finding that force that is reasonable while a suspect poses a threat may no longer be reasonable as the threat decreases). None of the designated evidence suggests that the Plaintiff continued to present a danger to the officers or others after he was handcuffed, or that he was even capable of actively resisting arrest or obtaining a weapon.[1] Even if the situation involving the passengers and the neighbors was tense and uncertain, the Defendants have not explained how that uncertainty extended to the already-subdued Plaintiff. Taking the Plaintiff's version of events as true, and construing all inferences in his favor, a reasonable jury could conclude that one of the officers at the scene used a greater degree of force than was reasonably necessary to effectuate the Plaintiff's seizure.

Accordingly, the Plaintiff can proceed to trial against an officer if he provides evidence from which a reasonable jury could conclude that the officer failed to take reasonable steps to attempt to stop the use of excessive force being used by a fellow member of law enforcement. The Plaintiff's argument, in sum, is

> that he was on the ground with heavy knees on his back and his face shoved into the asphalt for several minutes. Surely, if they did not commit the offense, Officers Fleece and Haley or one of the other City of Marion Officers had time to intervene. The Marion Officers had to know that excessive force was being used, because they were on the scene from the time of the arrest.

---

[1] The only mention of weapons in the designated materials are to those that members of law enforcement carried or displayed.

(Pl.'s Resp. 8, ECF No. 66.) Although the question "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact," it can be decided by a court on summary judgment where "considering the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

None of the six Defendant officers have denied being present at the scene on June 21, 2013. However, the Plaintiff has made no attempt to identify which officers may have had a genuine opportunity to intercede on his behalf during the three to five minutes that another officer was kneeing his back. The mere fact that an officer was present for some portion of the incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it, especially in light of the circumstances of the scene as a whole. Although the summary judgment record is sparse, it does reveal that officers were arriving in different vehicles, they were attempting to subdue three suspects, the Plaintiff and at least one of the passengers were talking to or arguing with the officers, and neighbors were screaming and yelling. For example, the Plaintiff testified in his deposition that, after he was handcuffed, the uniformed officer who had ordered him to the ground then pointed his weapon at Washington, who was in the process of getting out of the car. The Plaintiff told the officer "to lower his weapon or stand down because no one needed to be shot today because that was not the situation that was at hand." (Hill Dep. 122, 123.) He stated that "[t]here was a lot of confusion going on because there was people in the neighborhood that were coming out and watching this as it was taking place. And [Washington] and the officer was still disputing, something or other. . . . And I was asking [Washington] to calm down because we hadn't done

9

anything wrong." (*Id.* 123; *see also id.* at 127 (stating that there were probably fifteen people who witnessed the event).) According to the Plaintiff, that is when an officer came down on him with his knees and pressed his face into the ground. (*Id.*)

The designated evidence also includes the deposition testimony of Linda Johnson, a witness to the events and the Plaintiff's fianceé. In her description of the handcuffing, Johnson testified that a white police officer who was not in uniform was on the Plaintiff, the Plaintiff is "hollering, 'Man[,]' [a]nd the lady next door is screaming. . . . He takes [the Plaintiff] by like the shirt and pulls him up. As he's pulling him up, then that's when they handcuffed him." (Johnson Dep. 48.)[2] She also described police handcuffing someone who was "fussing about 'I wasn't driving.'" (*Id.* at 47.) The reasonable inference is that this refers to Washington or Allen. She testified that a second police car came through the alley and pulled over. (*Id.*)

Based on the above evidence, a trier of fact could conclude that the officer who followed the Plaintiff to his apartment and then ordered him to get on the ground turned his focus to the other occupants of the car after the Plaintiff was handcuffed. Additionally, the scene included six officers, three potential suspects, and fifteen witnesses—nearly twenty-five people in all. It could be that, by the time the Plaintiff was knelt upon, the officer who had his weapon drawn (he is never identified by name in the summary judgment record) was idly standing by. But that would be speculation, as none of the designated evidence allows this inference.

Additionally, there is no designated evidence indicating the responsibilities of any of the other officers, their activities, when they arrived, or even their proximity to the Plaintiff. *Cf.*

---

[2] Johnson's descriptions suggest that it was Officers Haley and Fleece who initially handcuffed the Plaintiff.

*Abdullahi*, 423 F.3d at 774 (denying summary judgment on failure to intervene claim where the suspect suffered severe injuries, the three officers were mere feet away from a fellow officer while the conduct in question occurred, and the plaintiff introduced expert testimony that the officer's efforts to restrain the suspect violated standard police practices); *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 984 (N.D. Ind. 2008) (denying summary judgment when the bystander officer was clearly present and within an arm's length of both the plaintiff and the acting officer). The Plaintiff's Statement of Genuine Disputes/Genuine Issues of Material Fact (which is just over one page long) identifies only two of the Defendants by name: "While [the Plaintiff] was pinned to the ground for this extended period of time, several Officers, including Officers Fleece and Haley, were on the scene and witnessed this person apply their knees, full body weight, to the unresisting [Plaintiff]." (Pl.'s Resp. 3, ECF No. 55; Pl.'s Resp. 3, ECF No. 56.) But the designated evidence does not create a reasonable inference that any of the officers *witnessed* the alleged event. Defendants Haley and Fleece provide their interrogatory answers, in which they state that they did not personally witness the Plaintiff being subject to force by a fellow member of law enforcement, and did not themselves use force. The evidentiary material the Plaintiff cites in support of his contention that the officers "witnessed this person apply their knees, full body weight, to the unresisting [Plaintiff]" is pages 176–77 and 181–84 of the Plaintiff's deposition. But it does not provide contradictory facts, or any facts upon which a jury could draw to find the Defendants liable.

In the testimony on pages 176 to 177, the Plaintiff describes being ordered to the ground and handcuffed before the officer with the weapon turned his attention to Washington. The Plaintiff also confirms that police were arriving on the scene after he was down on the ground

11

and handcuffed. His statements from the other cited pages describe the force of the kneeling officer, but add nothing that would indicate where the other officers on the scene were located or what they were doing during the time he was pinned to the ground. If there were any other "parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" Fed. R. Civ. P. 56(c)(1)(A), to genuinely dispute whether any of the Defendants observed another officer using excessive force, they are not cited to this Court.

This case does not involve disputed factual contentions to sift through or credibility determinations to be made, which would be tasks for the jury if they existed. The Court is not suggesting that the plaintiff must identify which police officer kneed him and which police officers failed to intervene. But a "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257. Summary judgment is the point in litigation where "the non-moving party is required to marshal and present the court with the evidence [he] contends will prove [his] case," which must be "evidence on which a reasonable jury could rely." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. There must be some evidence from which it could reasonably be inferred that an officer in the position of any of the officers on the scene should have known or recognized that

excessive force was being used, and had a realistic opportunity to stop the illegal conduct. The Plaintiff introduced no probative evidence to show that any of the Defendants were in a position to intervene, as opposed to merely being at the scene. No reasonable jury could find the Defendants liable for a constitutional violation based on such a complete absence of information. To find otherwise would suggest that they could be liable just for being there, regardless of what they observed and whether they were capable of preventing the harm. That is not the standard for failure to intervene liability.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Summary Judgment [ECF No. 59], filed by Defendants Scott Haley and Todd Fleece and GRANTS the Motion for Summary Judgment [ECF No. 62] filed by Defendants City of Marion, Officer Travis Brady, Officer Benjamin McKnight, Officer Gregg Melton, and Officer Steven Thompson. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on June 23, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT